**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JACQUELINE FERNANDEZ, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| CUDDLE CLONES, LLC, | ) ) ) |
| Defendant. | ) ) ) |

Case No.: 1:25-cv-01837-JAV

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**STEIN SAKS, PLLC**

*/s/Rami Salim*
Rami Salim, Esq.
One University Plaza, Ste. 620
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................................ii

I.   INTRODUCTION .......................................................................................................................1

II.  FACTUAL BACKGROUND........................................................................................................2

III. STANDARD OF REVIEW ..........................................................................................................2

IV.  LEGAL ARGUMENT..................................................................................................................5

    A.   DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS MET HER BURDEN TO SHOW THAT SHE HAS ARTICLE III STANDING. ..................................5

       i.   Plaintiff Has Alleged Sufficient Facts Evincing Past Injury.........................................................5

       ii.  Plaintiff Has Established Future Injury and Her Intent to Return to the Website........................7

       iii. The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean She Has Not Demonstrated Article III Standing in this Case. ............................................................................8

    B.   DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEFENDANT HAS FAILED TO MEET ITS "FORMIDABLE BURDEN" TO ESTABLISH THAT PLAINTIFF'S CLAIMS ARE MOOT. ............................................................................................................................10

    C.   WEBSITES ARE PUBLIC ACCOMMODATIONS UNDER THE ADA AND PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM WHICH ENTITLES HER TO RELIEF. ..................................14

V.   CONCLUSION...........................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013) ........................................................................ 10

*Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381 (E.D.N.Y. 2017)............ 16, 17, 18, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 5

*Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131 (E.D.N.Y. 2016)................................................. 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 5

*Bernstein v. City of New York*, 621 F. App'x 56 (2d Cir. 2015) .................................................... 3

*Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) ........................... 7, 8, 9

*Campbell v. Greisberger*, 80 F.3d 703 (2d Cir. 1996).................................................................. 11

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .................................................................. 10

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016).............................................. 3, 19

*Chafin v. Chafin*, 568 U.S. 165 (2013) ........................................................................................ 12

*Cheng v. Dep't of Justice,* No. 23 Civ. 3983 (AT) (GS), 2024 U.S. Dist. LEXIS 36662 (S.D.N.Y. Feb. 23, 2024)................................................................................................................................. 12

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94 (2d Cir. 2010) ........................... 11

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006)........................................................... 4

*Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542 (S.D.N.Y. July 5, 2023)................................................................................................................ 11

*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191 (S.D.N.Y. 2016) ................. 10

*Del-Orden v. Bonobos, Inc.*, 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) ...... 15, 17

*Diaz v. Kroger Co.,* No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4, 2019*)*.............................................................................................................................................. 13

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012)..... 5

*Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017)......................... 5

*Foster v. FEMA*, 128 F. Supp. 3d 717 (E.D.N.Y. 2015) ......................................................... 4, 5

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000) 10

*Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664 (S.D.N.Y. 2014) ...................................... 10

*Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 U.S. Dist. LEXIS 238707 (S.D.N.Y. Dec. 18, 2020)............................................................................................... 13

*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104 (2d Cir. 2018) ...................................... 4

*Hecht v. Magnanni Inc.*, No. 20 Civ. 5316 (MKV), 2022 U.S. Dist. LEXIS 60836 (S.D.N.Y.
    Mar. 31, 2022).................................................................................................................. 12

*Heckler v. Mathews*, 465 U.S. 728 (1984).................................................................................. 5

*Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067  (S.D.N.Y.
    May 20, 2021) ..................................................................................................................... 6

*Jobie O. v. Spitzer*, 2007 U.S. Dist. LEXIS 91460 (S.D.N.Y. Dec. 5, 2007) ............................. 11

*John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017)....................................... 6

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013)............................................... 4

*Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924 (S.D.N.Y. Mar.
    6, 2023)................................................................................................................................ 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 3

*Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503 (S.D.N.Y. July
    5, 2023)............................................................................................................................. 8, 9

*Martinez v. Gutsy LLC*, No. 22-CV-409 (NGG) (RLM), 2022 U.S. Dist. LEXIS 214830
    (E.D.N.Y. Nov. 29, 2022) ............................................................................................ passim

*Mary Jo C. v. N.Y.S. & Local Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013)........................................ 17

*Mejia v. High Brew Coffee, Inc.*, No. 1:22-CV-03667-LTS, 2024 U.S. Dist. LEXIS 180006
    (S.D.N.Y. Sep. 30, 2024) .................................................................................................. 14

*Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015)...................... 15, 16, 17

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86 (2d Cir.
    2010).................................................................................................................................... 4

*Packer v. Raging Capital Mgmt.*, LLC, 242 F. Supp. 3d 141 (E.D.N.Y. 2017)............................ 4

*Packingham v. North Carolina*, 582 U.S. 98 (2017) .................................................................. 17

*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ........................................................................ 17

*Sanchez v. NutCo, Inc., No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar.
    22, 2022)*......................................................................................................................... 8, 11

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ............................................................................. 3

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................................... 3

*Tavarez v. Extract Labs, Inc.*, 2023 U.S. Dist. LEXIS 55615 (S.D.N.Y. Mar. 30, 2023)............ 13

*Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365 (S.D.N.Y. 2022) ..................... 14

iii

*Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935 (E.D.N.Y. Feb. 24, 2022) ........................................................................... 3

*Toro v. Medbar Corp.*, No. 23 Civ. 6878 (AS) (JLC), 2024 U.S. Dist. LEXIS 91815 (S.D.N.Y. May 22, 2024) ................................................................................................ 13

*Williams v. MTA Bus Co.*, 44 F.4th 115 (2d Cir. 2022) .................................................. 15

*Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244 (E.D.N.Y. July 17, 2012) ............................................................................................................................. 5

*Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) ............................................. 15

**Statutes**

U.S. Const., Art. III, § 2 .................................................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 3

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 4

## I.    **INTRODUCTION**

Plaintiff, Jacqueline Fernandez, a blind individual, brings this action against Defendant, Cuddle Clones, LLC ("Defendant") under Title III of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"). Plaintiff alleges that Defendant has failed to design and maintain its commercial website in a manner that is accessible to visually impaired consumers, thereby denying her equal access to the goods, services, and information that Defendant offers to the general public.

Defendant's motion to dismiss rests not on a fair reading of the pleadings or law, but rather on an aggressive attack on the credibility and motives of a blind consumer who sought to participate in the digital marketplace. Plaintiff, who is legally blind and relies on screen-reading software to navigate websites, visited Defendant's online store with the intent to purchase a plush dog toy. She was deterred from completing a purchase only because Defendant's website presented significant access barriers to screen reader users. Her experience is not speculative or manufactured.

Defendant's legal theories have already been tested and rejected in this District. In Fernandez v. Katie May, LLC, No. 24-CV-1592 (VEC), 2025 WL 1291034 (S.D.N.Y. Mar. 20, 2025) ("Katie May"), the Honorable Valerie E. Caproni denied a virtually identical motion to dismiss brought against this very Plaintiff. There, as here, Plaintiff alleged that she attempted to buy a specific product but was deterred by online accessibility barriers. The Court held that such allegations—supported by factual details and a stated intent to return—easily satisfied the Article III standing requirements. Judge Caproni further held that internet-only retailers fall within the ADA's scope, rejecting the argument that the statute applies only to businesses with brick-and-mortar stores.

Plaintiff's experience and allegations align precisely with what courts—including courts in this district—have repeatedly recognized as sufficient to survive motions under Rules 12(b)(1) and 12(b)(6). Defendant's efforts to convert this litigation into a referendum on the integrity of blind ADA plaintiffs should be rejected. The Court should deny both motions and allow Plaintiff's claims to proceed to discovery and adjudication on the merits.

## II.    FACTUAL BACKGROUND

Plaintiff Jacqueline Fernandez is a legally blind individual who relies on screen-reading software to access the internet. Like millions of consumers, she uses e-commerce as her primary means of shopping, given the significant challenges brick-and-mortar retail presents for individuals with visual impairments. In June 2024, Ms. Fernandez was searching online for high quality pet toys and visited Defendant's website, www.cuddleclones.com, for the purpose of purchasing a high quality and durable toy for both her pet and for herself. She was particularly interested in Defendant's products because it purports to create products that replicate one's own pet, in near lifelike quality. This was appealing for Plaintiff, who is an avid pet lover and often buys pet-related toys for both herself and her pet.

She attempted to shop for a plush toy, however, she was unable to complete a transaction due to significant accessibility barriers. These included unlabeled buttons, improperly structured navigation elements, broken links, and form fields that could not be completed using her screen reader. As a result, she was deterred from continuing her shopping experience. She filed the instant action alleging violations of Title III of the Americans with Disabilities Act and seeking injunctive and declaratory relief. (Compl. ¶¶ 1–2). Defendant responded with a motion challenging Plaintiff's standing and asserting that the ADA does not apply to stand-alone websites.

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to assert in a motion to dismiss that a plaintiff lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies," which is rooted in the concept of standing. U.S. Const., Art. III, § 2; *Bautz v. ARS Nat'l Servs.*, 226 F. Supp. 3d 131, 137 (E.D.N.Y. 2016). To assert federal subject-matter jurisdiction, a party must have Article III standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). The United States Supreme Court has established that standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). When a plaintiff seeks injunctive relief, he must also prove that the identified injury in fact presents a "real and immediate threat of future injury" often termed a "likelihood of future harm." *Bernstein v. City of New York*, 621 F. App'x 56, 57 (2d Cir. 2015) (summary order) (quoting *Shain v. Ellison*, 356 F.3d 211, 215-16 (2d Cir. 2004)).

"In reviewing standing under the ADA, a broad view of constitutional standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *25 (S.D.N.Y. Dec. 4, 2019). The threshold for Constitutional standing is appreciably lower on a 12(b)(1) motion than it is, for example, on a motion under 12(b)(6). *See Thompson v. Equifax Info. Servs. LLC*, No. 20-CV-6101 (RPK) (ST), 2022 U.S. Dist. LEXIS 32935, at *13-14 (E.D.N.Y. Feb. 24, 2022) ("Yet, here, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing."); *see also Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir.

3

2018) ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action.").

In the ADA context, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer . . . that plaintiff intended to return to the [public accommodation]." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013). These are what are now known as the *Kreisler* factors. "To satisfy standing in ADA website cases specifically, courts in this district have required the plaintiff to allege certain facts in detail, including when they attempted to access to the website, what they were attempting to do on the website, the specific barriers that prevented them from gaining access, and how they intend to utilize the website in the future." *Angeles v. Grace Prods.*, No. 20-cv-10167 (AJN), 2021 U.S. Dist. LEXIS 182317, at *3-4 (S.D.N.Y. Sep. 23, 2021) (citing cases).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to assert in a motion to dismiss that a plaintiff has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). However, when reviewing a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The complaint must allege "a plausible set of facts sufficient to raise a right to relief above the speculative level." *Foster v. FEMA*, 128 F. Supp. 3d 717, 722 (E.D.N.Y. 2015) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010)).

A claim is plausible on its face when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Packer v. Raging Capital Mgmt.*, LLC, 242 F. Supp. 3d 141, 146 (E.D.N.Y. 2017) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 663 (2009)). This does not require a heightened pleading of factual specifics. *See Foster*, 128 F. Supp. 3d at 722 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, a complaint that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement" will not suffice. *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143, 161 (E.D.N.Y. 2012) (citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* (citation omitted).

## IV.   LEGAL ARGUMENT

### A. DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF HAS MET HER BURDEN TO SHOW THAT SHE HAS ARTICLE III STANDING.

#### i.   Plaintiff Has Alleged Sufficient Facts Evincing Past Injury.

Plaintiff has sufficiently alleged past injury, satisfying the first *Kreisler* factor, by detailing how she attempted to access Defendant's website but encountered accessibility barriers that denied her full and equal access. Specifically, Plaintiff's Complaint describes how the website's unlabeled buttons, broken links, improperly structured navigation elements, and inaccessible form fields prevented her from navigating the site and completing a purchase. These barriers deprived Plaintiff of the ability to enjoy Defendant's website as sighted individuals do, thus establishing a concrete and particularized injury under the ADA. Discrimination itself constitutes harm. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017); *see also, Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244, at *6 (E.D.N.Y. July 17, 2012) ("Being subjected to discrimination in violation of [the ADA's] provisions is itself an injury sufficient to confer Article III standing."); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984) ("Discrimination itself, by perpetuating 'archaic and stereotypic' notions or by stigmatizing members of the

5

disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.").See *Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y. 2017); *Williams v. Rhea*, No. 10-CV-5440 (FB), 2012 U.S. Dist. LEXIS 99244, at *6 (E.D.N.Y. July 17, 2012); *Heckler v. Mathews*, 465 U.S. 728, 739-40 (1984).

Plaintiff's allegations are materially indistinguishable from those sustained recently in *Fernandez v. Katie May*, where Judge Caproni reaffirmed that a blind plaintiff unable to access a retailer's website due to digital barriers stated a cognizable injury-in-fact. 2025 U.S. Dist. LEXIS 51174, at *2. Here, too, Plaintiff describes barriers that deterred her from shopping, confirming a concrete injury. Moreover, courts in this Circuit routinely hold that allegations of website inaccessibility supported by factual detail—as Plaintiff has pled—are sufficient to establish past injury. *See Angeles v. Grace Prods. Inc.*, 2021 U.S. Dist. LEXIS 182317, at *4-5 (S.D.N.Y. Sept. 22, 2021) (finding past injury where plaintiff alleged that screen-reading software could not discern website content due to missing descriptions and broken links); *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist. LEXIS 209202, at *26 (S.D.N.Y. Dec. 4, 2019) (holding that allegations of inaccessible navigation tabs and calculators established past injury).

Furthermore, the Second Circuit's "low threshold" for injury-in-fact under Rule 8 further supports denial of the motion. See *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 738 (2d Cir. 2017); *see also, Jaquez v. Dermpoint, Inc.*, No. 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067, at *4-5 (S.D.N.Y. May 20, 2021) (concluding that general allegations of access barriers, including the website's failure to "describe the contents of graphical images," "properly label title[s]," and "distinguish one page from another," as well as encountering "multiple broken links,"

6

were sufficient to survive a motion to dismiss and establish past injury). Plaintiff's detailed allegations of encountering specific accessibility barriers demonstrate past injury sufficient to survive a Rule 12(b)(1) motion.

### ii.    Plaintiff Has Established Future Injury and Her Intent to Return to the Website.

Defendant's reliance on *Calcano* and *Winegard* is misplaced. *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022); *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021). Unlike in *Calcano*, Plaintiff here provides detailed allegations about her intent to return to Defendant's website if it becomes accessible. She has identified a specific product she intended to purchase, spent significant time navigating the site, and expressed a clear and credible intent to complete a purchase if given equal access.

Courts in this jurisdiction continue to find standing where the allegations, although perhaps not novel-length, nevertheless establish the factual basis for the plaintiff's interest in the website. *See Loadholt v. ShirtSpace*, No. 22-CV-02870 (ALC), 2023 U.S. Dist. LEXIS 36924, at *6-7 (S.D.N.Y. Mar. 6, 2023) (finding intent to return adequately pled where "Plaintiff has alleged the specific product he intended to purchase—a T-shirt … where Defendant is an apparel retailer and where Plaintiff alleges that he was unable to navigate Defendant's website so that he could properly browse for a specific T-shirt and complete his purchase."); *see also Chalas*, 2022 U.S. Dist. LEXIS 211816 at *8-9 (distinguishing *Calcano* and finding that the plaintiff adequately pled injury-in-fact based on an alleged interest in stomach repair supplements for her cousin and a particularized interest in the website based on the defendant's commitment to staying "ahead of the curve"); *Davis*, 2023 U.S. Dist. LEXIS 115542 at *18-20 (distinguishing *Calcano* and finding intent-to-return where the plaintiff "alleges that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and

7

tasty new food," and where the defendant's honey butter is distinctive for its health-centric and environmentally friendly features); *Maddy v. Life Time, Inc.*, No. 22-cv-5007 (LJL), 2023 U.S. Dist. LEXIS 115503, at *13-14 (S.D.N.Y. July 5, 2023) (finding intent-to-return where the plaintiff "alleges that she has a hobby of collecting body lotions and oils from various brands and enjoys purchasing different branded lotions to add to her collection, and the website offers a specific oil, the Morroccan Oil Dry Body Oil, which is a high quality body lotion that Plaintiff wants to add to her collection.").

The Second Circuit has explained that the central inquiry is whether "examined under the totality of all relevant facts," the plaintiff plausibly alleges "a real and immediate threat of future injury." *Calcano*, 36 F.4th at 75. That standard is plainly met here. *See also Tavarez v. Moo Organic Chocolates*, 641 F. Supp. 3d 74, 83 (S.D.N.Y. 2022); *Sanchez v. Nut.com, Inc.*, 2022 U.S. Dist. LEXIS 51247, at *5.

### iii.    The Fact that Plaintiff Filed Other Website Accessibility-based Suits Does Not Mean She Has Not Demonstrated Article III Standing in this Case.

Defendant's argument that Plaintiff's standing should be denied due to her status as a "serial litigant" has no merit. Courts in this District have rejected such contentions where, as here, the allegations are sufficiently particularized. *Calcano* is easily distinguishable from the facts of this case. In that case, the Second Circuit rejected the plaintiffs' standing because the complaints (consolidated for purposes of appeal) were so riddled with "errors, oddities and omissions" – errors that went to the heart of the plaintiffs' intent to return – that the court struggled with the veracity of the allegations. *See Calcano*, 36 F.4th at 77 (reasoning that the "Mad-Libs-style complaints further confirms the implausibility of their claims of injury," and noting, as examples, that "Murphy asserts that he would return to a Kohl's that doesn't exist" and "Dominguez seeks to go back to Banana Republic for its food."). Coupled with the boilerplate nature of the complaints and

8

the fact that the plaintiffs were serial litigators who had filed hundreds of such complaints, the Circuit Court refused to find standing. *Id.* at 76-77.

Unlike the complaints in Calcano, which contained bizarre inconsistencies and lacked any factual support, Plaintiff's complaint here is detailed, factually grounded, and will be supported by testimony. Nothing in the record calls into question the sincerity of her shopping attempt or her intent to return. As Judge Caproni acknowledged in *Katie May*, the prevalence of website inaccessibility necessitates repeated enforcement by visually impaired individuals. The fact that Plaintiff has brought multiple actions is more a reflection of systemic barriers than a reason to deny her rights under the ADA.

Simply put, Defendant's reliance on Plaintiff's status as a "serial litigator" is not persuasive. The fact that singular plaintiffs file dozens of these complaints reflects the widespread discrimination that the visually-impaired face on a daily basis and the ubiquitous nature of the internet itself. *See Maddy*, 2023 U.S. Dist. LEXIS 115503 at *15-16 (rejecting the defendant's arguments that filing over 70 complaints made the plaintiff's allegations of intent to return implausible and reasoning, "It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that visually impaired consumers face on a daily basis…"); *see also Davis*, 2023 U.S. Dist. LEXIS 115542 at *10-11 ("The fact that Plaintiff has filed nearly fifty complaints may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet. It is also not surprising, in light of the ubiquitous role that the internet plays in people's lives, that Plaintiff may have intended to visit and to use over

9

fifty websites."). Defendant's attempts to twist this basic reality into something other than what it is reflects a profound ignorance of the access barriers that the visually impaired encounter on a daily basis.

**B.    DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE DEFENDANT HAS FAILED TO MEET ITS "FORMIDABLE BURDEN" TO ESTABLISH THAT PLAINTIFF'S CLAIMS ARE MOOT.**

Defendant argues that the Court should dismiss her claims because the Website has been, and is, ADA-compliant. However, "[a] defendant's voluntary compliance with the statute" renders a claim moot only "if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 U.S. Dist. LEXIS 238707, at *4 (S.D.N.Y. Dec. 18, 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 190 (2000)); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (observing that mootness occurs "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot") (internal quotation marks and citations omitted).

Furthermore, the voluntary cessation doctrine "recognizes [] that 'a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.'" *Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 669 (S.D.N.Y. 2014) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013)). "'Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.'" *De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (quoting *Already, LLC*, 133 S. Ct. at 727); *see also Jobie O. v. Spitzer*,

10

2007 U.S. Dist. LEXIS 91460, at *13 (S.D.N.Y. Dec. 5, 2007) ("[A] party should not be able to alter its behavior or practices temporarily in order to evade judicial review or manipulate the jurisdiction of the courts."). Rather, "[t]he voluntary cessation of allegedy illegal activity may render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief of events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)). Defendant has not met those requirements at this stage of the proceedings. Rather, this case therefore falls within the clear scope of "capable of repetition, yet evading review." Defendant would be free to return to its old ways once this litigation is done, and any threat averted, simply by announcing to the Court that it has reformed its wayward ways, avoiding a bad decision in the interim, and then returning to its bad habits.

Here, Defendant asserts that Plaintiff's claims are moot because the Website does not have and never has had any accessibility issues. However, when Plaintiff visited the Website multiple times prior to filing suit in order to purchase a product from Defendant's Website, she encountered access barriers that Defendant has failed to rectify. These allegations must be accepted as true at this juncture and are sufficient to establish future injury. *See Tavarez*, 641 F. Supp. 3d at 82 ("reasonable to infer that this discriminatory treatment will continue because Plaintiff has visited Defendant's website on three occasions, and its accessibility barriers have not been addressed as of September 8, 2022."); *see also Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 U.S. Dist. LEXIS 51247, at *7 (S.D.N.Y. Mar. 22, 2022); *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 U.S. Dist. LEXIS 115542, at *16 (S.D.N.Y. July 5, 2023).

11

Even though in accordance with *Tavarez*, these allegations are sufficient to establish future injury, Plaintiff will now turn to the affidavits submitted by Defendant, as part of and referenced in Defendant's Motion. Defendant submits an affidavit which purports to dispute Plaintiff's allegations regarding the barriers she faced while using Defendant's Website. These affidavits are offered by Defendant to support its mootness argument. Notably, however, the affiant does not assert that she is a qualified expert in ensuring, providing, or maintaining website accessibility for the blind and visually impaired. The affidavit cannot be relied upon to establish the state of the Website's accessibility, and do absolutely nothing to advance Defendant's position as to Plaintiff's standing under Article III. Simply put, the affidavit submitted by Defendant is nothing but a self-serving document that does nothing to prove to Plaintiff or to this Court that Plaintiff's claims are moot.

Rather, Defendant attempts to bootstrap a mootness argument to an argument about the merits, which is not proper at this stage in the proceedings. Defendant has submitted no declaration from a company official, or any other evidence, that it took any steps either (1) to improve or remedy the Website since this action was filed; or (2) to ensure the Website remains ADA-compliant in the future. Instead, Defendant appears to dispute whether the access barriers alleged in the Complaint existed in the first place, which is an issue of fact going to the merits. It is not a genuine argument that the case has been rendered "moot." *See Chafin v. Chafin*, 568 U.S. 165, 174 (2013) (rejecting mootness argument that "confuses mootness with the merits"); *Cheng v. Dep't of Justice,* No. 23 Civ. 3983 (AT) (GS), 2024 U.S. Dist. LEXIS 36662, at *7 (S.D.N.Y. Feb. 23, 2024) (same); *see also Hecht v. Magnanni Inc.*, No. 20 Civ. 5316 (MKV), 2022 U.S. Dist. LEXIS 60836, at *4 (S.D.N.Y. Mar. 31, 2022) (rejecting mootness argument in ADA website case

12

because, "[a]t bottom, there is a clear factual dispute . . . whether the changes would continue following termination of this lawsuit").

This case thus bears no resemblance to those cases finding that an ADA website defendant had met its "formidable burden" of demonstrating mootness. *See, e.g.*, *Toro v. Medbar Corp*., No. 23 Civ. 6878 (AS) (JLC), 2024 U.S. Dist. LEXIS 91815, at *3 (S.D.N.Y. May 22, 2024) (defendant submitted declaration from its general manager showing that it had "remedied all of the ADA violations identified by Toro in the amended complaint and contracted with a vendor . . . to ensure that the website remains complaint with the ADA and state law"); *Tavarez v. Extract Labs, Inc.*, 2023 U.S. Dist. LEXIS 55615, at *3 (S.D.N.Y. Mar. 30, 2023) (defendant submitted declarations from its Director of Marketing attesting, *inter alia*, that it had "completed a complete redesign of the website . . . to comply with WCAG 2.1," "resolved each of the identified [accessibility] issues" alleged by plaintiff, and paid for a subscription which "continually monitors WCAG developments" and "provides 24-hour automatic maintenance scans" to ensure there are no accessibility issues) (cleaned up); *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 U.S. Dist. LEXIS 238707, at *5-6 (S.D.N.Y. Dec. 18, 2020) (defendant submitted declaration from its Director of E-Commerce showing that "Defendant has since remedied each of the ADA violations alleged by Plaintiff" and "intends to commence a significant redesign of the Website, of which accessibility will be a central aspect") (cleaned up); *Diaz v. Kroger Co.,* No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177, at *3 (S.D.N.Y. June 4, 2019*)* (defendant submitted affidavit from its Group Product Design Manager showing, *inter alia*, that "the Website is today compliant with [the WCAG] standards," "the specific barriers to access identified [by plaintiff] have been remedied," and "Defendant commits to keep its website up to date and

13

compliant with all applicable standards to make the website as accessible to all as possible")
(cleaned up).

### C. WEBSITES ARE PUBLIC ACCOMMODATIONS UNDER THE ADA AND PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM WHICH ENTITLES HER TO RELIEF.

Defendant alternatively argues that Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because one court within this district has recently held that a standalone website is not a "place of public accommodation" within the meaning of the ADA. *See Mejia v. High Brew Coffee, Inc.*, No. 1:22-CV-03667-LTS, 2024 U.S. Dist. LEXIS 180006, at \*17 (S.D.N.Y. Sep. 30, 2024). However, other courts within this district reached the exact opposite conclusion. *See Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 369 (S.D.N.Y. 2022) (holding that a retail website "falls within the meaning of a 'place of public accommodation' as defined in Title III of the ADA, regardless of its connection *vel non* to a physical space."). Further, neither the Second Circuit Court of Appeals nor the United States Supreme Court have definitively ruled on the issue. This Court is not bound by *Mejia* or *Moo Organic Chocolates*. Rather, this Court must engage in its own statutory interpretation of the ADA. For the reasons that follow, this Court should conclude that a Website like Defendant's is a "public accommodation" within the meaning of the ADA.

The issue of whether the Website is a place of public accommodation is a legal issue that has not yet been settled by the Second Circuit and thus must be settled by this Court as a matter of law. *See e.g. Martinez v. Gutsy LLC*, No. 22-CV-409 (NGG) (RLM), 2022 U.S. Dist. LEXIS 214830, at \*5, \*8 (E.D.N.Y. Nov. 29, 2022) (noting that whether the ADA applies to standalone websites is an "unresolved legal question" that "is a matter of pure statutory construction."). The only facts that matter, as Defendant apparently concedes, is the fact of the Website and the lack of

14

any physical store location connected with it. This *legal question* must be decided with reference to relevant case law, and that case law has resoundingly answered in the affirmative. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *7 ("The vast majority of courts in this circuit have taken the [] position[] that commercial websites qualify as places of public accommodation independent of a nexus to a physical space.").

Reasoning that the statute is ambiguous as to whether a "place of public accommodation," as defined under 42 U.S.C. § 12181(7), necessarily requires a physical storefront, courts have turned to standard "canons and other interpretive tools to understand the statute in question." *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *9 (citing *Williams v. MTA Bus Co.*, 44 F.4th 115, 127 (2d Cir. 2022)). All but ignoring this analysis, Defendant presumes that the statute is clear on its face and the required nexus a foregone conclusion. But as *Martinez* and others have recognized, "[s]ome of the entities listed as public accommodations in § 12181(7)(E) and (F) are not *necessarily*, or even *predominantly*, brick-and-mortar places of commerce," citing travel agencies, which conducted business by phone or email in 1990 when the statute was passed, as one important example. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *10 (emphasis in original); *see also Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 568-71 (D. Vt. 2015); *see also Del-Orden v. Bonobos, Inc.*, 2017 U.S. Dist. LEXIS 209251, at *19-22 (S.D.N.Y. Dec. 20, 2017). Others have reasoned that the term "other sales or rental establishment," read in today's context, could easily include cyber-commerce. *Del-Orden*, 2017 U.S. Dist. LEXIS 209251 at *21-22.

Turning to the tools of statutory construction to resolve this ambiguity, these courts have found that § 12181(7) does not require a physical location. *Martinez*, for example, rejected the argument, advanced by *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) and others, *see e.g. Winegard*, 556 F.Supp.3d at 178, that the doctrine of *ejusdem generis* compels the

15

conclusion that the residual clauses appearing in the list of examples in § 12181(7) are necessarily limited to physical structures. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *11-12. Calling the argument "flawed," *Martinez* reasoned that the list of examples provided in § 12181(7) could very well refer to the *functions* of various retail establishments, and not just the physical places themselves. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *11-13 (citing Johanna Smith. & John Inazu, Virtual Access: A New Framework for Disability and Human Flourishing in an Online World, 21 Wis. L. Rev. 719, 766 (2021)). Read in that light, the doctrine of *ejusdem generis* compels a much broader reading of § 12181(7). *See Id.* at *12-13.

Turning to the statute at large, these courts have reasoned that use of the term "place" was merely a term of convenience for Congress, rather than a substantive limitation on a "place of public accommodation," because the term "place" is used interchangeably with "establishment" in the list of examples under § 12181(7). *See Scribd*, 97 F. Supp. 3d at 572; *see also Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 399-400 (E.D.N.Y. 2017). Moreover, these courts have noted that when it wanted to, Congress was perfectly capable of reflecting a physical-location-based limitation on a definition, as it did with the definition of "facilities" in 42 U.S.C. § 12183, which "details what physical modifications to 'facilities' are required under the law." *Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14; *see also Blick Art Materials*, 268 F. Supp. 3d at 394-95 (additionally noting that the term "facility" is used in 42 U.S.C. § 12182(a)). Relying on the "fundamental canon[s] of construction" "that identical words used in different parts of the same act are intended to have the same meaning," and "that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," these courts reason that Congress's failure to use the term "facility" in § 12181(7) was a deliberate omission designed to enlarge places of public accommodation beyond mere physical locations. *See Blick Art Materials*,

16

268 F. Supp. 3d at 395 ("The Act could have easily cabined the prohibition on discrimination to the goods, services, etc. of a 'facility' of a 'place of public accommodation,' or used the word 'facility' instead of 'place,' but it did not."); *see also Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14 (finding that "change in word choice - from 'public accommodations' to 'facilities' - when intending to discuss a physical space, further bolsters a textual interpretation of § 12181 … as having been concerned with entities' functions rather than their physical spaces.").

Turning to the legislative history, one of other stalwart tools of statutory construction, courts have almost uniformly noted the broad remedial purpose of the ADA and Congress's goals of having the ADA keep pace with rapid technological developments in society. *See Del-Orden*, 2017 U.S. Dist. LEXIS 209251 at *23-24; *see also Scribd*, 97 F. Supp. 3d at 573-74 ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities … should keep pace with the rapidly changing technology of the times.") (quoting H.R. Rep. 101-485(II), at 108 (1990)); *see also Martinez*, 2022 U.S. Dist. LEXIS 214830 at *16-17 ("To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life.") (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)).

A narrow reading of "public accommodation" would frustrate Congress's purpose. *See Del-Orden*, 2017 U.S. Dist. LEXIS 209251 at *24-25 (citing *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) ("While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet[.]'") (quoting *Mary Jo C. v. N.Y.S. & Local Ret. Sys.*, 707 F.3d 144, 160 (2d Cir. 2013) ("Limiting Title III's scope to brick-and-mortar venues" would "'render [Title III] effectively impotent' in broad swaths of social and economic

17

life, 'which would be contrary to the broad remedial purpose of the ADA—an act that "has been described as a milestone on the path to a more decent, tolerant, progressive society."'").

Noting the substantial public policy issues at stake, these courts have further noted the expansive and sweeping technological developments that have happened in society over the last several decades. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14-15 ("In the more than three decades since the landmark passage of the ADA, the internet has taken on a far greater role in the lives of Americans than the ADA's drafters could ever have imagined."); *see also Blick Art Materials*, 268 F. Supp. 3d at 398 ("Today, internet technology enables individuals to participate actively in their community and engage in commerce from the comfort and convenience of their home."). *Martinez* was particularly eloquent in describing the increasing encroachment of the internet on the daily lives of Americans during the critical period of the pandemic when the public was largely limited to their household, and even afterward as many Americans continue to express a reluctance to participate in public gatherings. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *14-16.

Therefore, excluding the ADA from these technological developments would hamstring an important statute in American life. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *15-16 ("As an ever-greater proportion of the activities of everyday life and its myriad commercial transactions begin to take place online, a reading of the statute that limits its effect to entities transacting commerce in-person becomes one that renders the statute increasingly meaningless."); *see also Blick Art Materials*, 268 F. Supp. 3d at 398 ("It would be a cruel irony to adopt the interpretation of the ADA espoused by Blick, which would render the legislation intended to emancipate the disabled from the bonds of isolation and segregation obsolete when its objective is increasingly within reach.").

Interpreting the ADA in this fashion would also lead to "absurd results," one of the basic no-no's of statutory interpretation. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *16 ("A core maxim of statutory interpretation, the presumption against absurdity, tells us never to ascribe an absurd meaning to Congress."). Moreover, interpreting the ADA so narrowly would lead to the absurd result that a vendor would be precluded from discriminating at its physical location, but could freely do so online. *See Blick Art Materials*, 268 F. Supp. 3d at 396-97.

If these statutory tools were not enough, courts have also recognized that the U.S. Department of Justice, tasked by Congress with interpreting the ADA, has taken the position that the ADA applies to websites without a nexus to a physical location. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *18-20 (citing Dep't of Just., Guidance on Web Accessibility and the ADA (Mar. 18, 2022)). This interpretation is entitled to *Skidmore* deference which the *Martinez* court found persuasive. *See Martinez*, 2022 U.S. Dist. LEXIS 214830 at *18-20. For these reasons, this Court should hold that § 12181(7) applies to standalone websites and that Plaintiff has adequately stated a claim which entitles her to relief under the ADA.

## V.    **CONCLUSION**

For the foregoing reasons, Defendant's motions to dismiss under Rules 12(b)(1) and 12(b)(6) should be denied in their entirety. Plaintiff has plausibly alleged both a concrete injury-in-fact and a genuine intent to return, and she has identified specific access barriers that prevented her from using Defendant's website on equal terms. Further, the allegations fall squarely within the protections afforded by Title III of the Americans with Disabilities Act, which applies fully to online-only retailers.

Dismissal at this stage would require the Court to disregard well-pleaded factual allegations and persuasive precedent. Plaintiff respectfully requests that the Court deny Defendant's motions

19

and permit this case to proceed to discovery and adjudication on the merits.


Dated: August 5, 2025


Respectfully Submitted,

**STEIN SAKS, PLLC**

*/s/Rami Salim*
Rami Salim, Esq.
One University Plaza Drive, Suite 620
Hackensack, New Jersey 07601
Phone: 201-282-6500
Fax: 202-282-6501
rsalim@steinsakslegal.com

20

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2025, I electronically served the foregoing served this day on all counsel either via email or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Rami Salim*
Rami Salim, Esq.